IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| MELVIN L. COX, | ) | |
| | ) | |
| Petitioner, | ) | Case No. CV 04-0324-S-BLW |
| | ) | |
| v. | ) | **MEMORANDUM ORDER** |
| | ) | |
| DAVE PASKETT, Warden, | ) | |
| | ) | |
| Respondent. | ) | |
| ———————————————— | ) | |

Petitioner filed a Second Amended Petition (Docket No. 30) on July 28, 2005.

Respondent filed a Motion for Summary Dismissal (Docket No. 37) on December 7,

2005, seeking dismissal of the Second Amended Complaint.  The Motion for Summary

Dismissal is now fully briefed.  The Court has determined that oral argument is not

necessary.  Accordingly, having reviewed the record in this case and having considered

the arguments of the parties, the Court enters the following Order.

**MEMORANDUM ORDER - 1**

# I.

## MOTION FOR SUMMARY DISMISSAL

### A.    Background

On or about June 16, 1971, Petitioner pled guilty to first degree murder of a peace officer.  Petitioner alleges that it was his understanding from his lawyer's advice that he could be sentenced to no longer than thirty (30) years, even if the sentence were termed an "indeterminate life" sentence.  Petitioner, at the sentencing hearing, objected to the words "for the rest of his natural life," in his sentence.  Petitioner alleges that the sentencing judge crossed out those words from the written judgment, which now reads: "for the maximum indeterminate term of ~~the rest of his natural~~ life."  The crossed-out judgment of conviction is a part of the official state record.  *See State's Exhibit A-4*.  The reason that the words were crossed out is disputed and not at issue today.

Petitioner has now been incarcerated for over thirty years.  In his federal Habeas Corpus Petition he brings four claims: (1) Petitioner's Eighth and Fourteenth Amendment rights are being violated because he is being held beyond the expiration date of his sentence because the judge intended and represented that the sentence of indeterminate life would equal a maximum of thirty years; (2) that Petitioner's guilty plea was involuntary because it was induced by a plea bargain that was not kept, in violation of the Fourteenth Amendment; (3) that Petitioner's guilty plea was involuntary because trial counsel was ineffective in advising him that an indeterminate sentence was a maximum of

**MEMORANDUM ORDER - 2**

thirty years; and (4) the fact that the judge intended that Petitioner be released on parole in thirty years and the Parole Commission's failure to release him is the equivalent of the Parole Commission changing his sentence to a fixed, rather than an indeterminate, life sentence, an alleged violation of the Eighth Amendment, the Fourteenth Amendment, and the Ex Post Facto Clause.

Respondent currently asserts that three of Petitioner's claims are barred by the statute of limitations, and that all four claims are procedurally defaulted. The Court now addresses these contentions.

## B.      Standard of Law

Rule 4 of the Rules Governing § 2254 Cases authorizes the Court to summarily dismiss a petition for writ of habeas corpus when "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." In considering dismissal, the Court construes the facts in a light most favorable to the petitioner. The Court may take judicial notice of facts outside the pleadings, and doing so does not convert a motion for summary dismissal into a motion for summary judgment. *Mack v. South Bay Beer Distributors*, 798 F.2d 1279, 1281 (9th Cir. 1986).[1] Accordingly, the Court shall take judicial notice of those portions of the state court record lodged in this case.

## C.      Statute of Limitation Issues

---

[1]*abrogated on other grounds by Astoria Federal Sav. and Loan Ass'n v. Solimino*, 501 U.S. 104, 111 S.Ct. 2166 (1991).

**MEMORANDUM ORDER - 3**

1.      Standard of Law

The Anti-Terrorism and Effective Death Penalty Act (AEDPA), enacted April 24,

1996, established a one-year statute of limitations for federal habeas corpus actions.  *See*

28 U.S.C. § 2244(d)(1).  Because Petitioner's federal habeas corpus petition was filed

after AEDPA's enactment date, it is subject to the one-year statute of limitations.  The

one-year period begins to run from the date of one of four triggering events, as specified

in 28 U.S.C. § 2244(d)(1)(A)-(D).

The most common triggering event occurs on the date upon which the judgment

became final, either after direct appeal or after the time for seeking an appeal expired.

Where, as here, a petitioner's judgment became final before the effective date of AEDPA,

his federal petition must be filed by April 24, 1997, one year from the effective date of

AEDPA.  *Patterson v. Stewart*, 251 F.3d 1243, 1246 (9th Cir. 2001).

The triggering event for the statute of limitations on a parole claim is "the date on

which the factual predicate of the . . . claims presented could have been discovered

through the exercise of due diligence" under § 2244(d)(1)(D), rather than from "the date

on which the judgment became final" under  § 2244(d)(1)(A), because an administrative

decision is not a judgment.  *Redd v. McGrath* 343 F.3d 1077, 1081-82 (9th Cir. 2003).

The Ninth Circuit Court of Appeals has addressed the circumstance in which the

federal habeas corpus statute of limitations expires before a state post-conviction

collateral relief statute.  In *Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003), the

**MEMORANDUM ORDER - 4**

court held that "section 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed."

In its previous Order, the Court noted that the Ninth Circuit has not yet determined whether a separate statute of limitations for each claim exists, or whether there is a single statute of limitations for the entire petition.  Since that date, the United States Supreme Court has suggested that separate dates of accrual are appropriate for claims arising under "§ 2244(d)(1)(B) (governmental interference); § 2244(d)(1)(C) (new right made retroactive); [and] § 2244(d)(1)(D) (new factual predicate)."  *Pace v. Diguglielmo*, 544 U.S. 408, 416 n.6 (2005).

The federal habeas statute of limitations provides tolling (suspending) of the one-year period for all of  "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending."  28 U.S.C. § 2244(d)(2).  This is called "statutory tolling."

If, after applying statutory tolling, a petitioner's petition is deemed untimely, a federal court can hear the claims only if the petitioner can establish that "equitable tolling" should be applied.  In *Pace v. DiGuglielmo*, 544 U.S. 408 (2005), the Court clarified that,"[g]enerally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way."  *Id*. at 418.  In order to qualify for equitable tolling a circumstance must have *caused* Petitioner to be unable to file his federal Petition in time.  *See Allen v. Lewis,* 255 F.3d 798, 800 (9th Cir. 2001) (per

**MEMORANDUM ORDER - 5**

curiam) (requiring petitioner to show that "extraordinary circumstances" were the "but-for and proximate cause of his untimeliness").

    2.    <u>Discussion of Claim 1</u>

Claim 1 is that Petitioner's Eighth and Fourteenth Amendment rights are being violated by incarcerating him beyond his sentence expiration date because the sentencing judge intended and represented that the sentence of indeterminate life would equal a maximum of thirty years.  For the following reasons, the Court concludes that this claim, construed as an *execution of sentence* claim, did not accrue until Petitioner had been held for longer than thirty years, and, as a result, it is timely.

There is no clear precedent governing this issue in the Ninth Circuit.  This Court agrees with the Second Circuit Court of Appeals that a challenge to the *execution or administration* of a person's sentence rather than a challenge to a person*'s conviction or sentence* – particularly a claim that a person is being held past his full-term release date – cannot be brought before the alleged release date.  *James v. Walsh*, 308 F.3d 162, 168 (2d Cir. 2002) (successive petition context)*; cf. White v. Lambert*, 370 F.3d 1002, (9th Cir. 2004) (adopting the *James* view that § 2254 rather than § 2241 is the proper means for challenging administration of one's sentence rather than the underlying state court judgment); *cf. Mitchell v. Department of Corrections*, 272 F.Supp.2d 464, 477 (D. Pa. 2003) (using the *James* approach in a § 1983 action to calculate the time during which the plaintiff could have filed a habeas corpus action to determine whether *Heck v. Humphrey*, 512 U.S. 477 (1994), should be applied in a situation where the plaintiff had been

**MEMORANDUM ORDER - 6**

completed his sentence).  The *James* Court explained: "James could not have argued that he was in custody in violation of laws of the United States before the time when, according to his calculations, he should have been released."  308 F.3d at 168.

Similarly, in Petitioner's case, the state district court determined that his claim that he was held beyond his full-term release date (allegedly thirty years) was not ripe until the thirty-year mark was reached on June 16, 2001.  *See State's Lodging of State Court Record*, A-1, p. 138, *et seq*., and p. 146, *et seq.*  (That mark was reached during the pendency of Petitioner's state habeas corpus case, and the state district court addressed the claim on the merits).

Based on the start of the federal statute of limitations as June 16, 2001, the Court concludes that Petitioner's federal Petition, filed June 22, 2004, was timely.  At the time the federal statute began, Petitioner was in the midst of pursuing his claims in state court between May 4, 2000, when he filed a state habeas corpus petition, and October 15, 2003, when the appeal was dismissed.  Assuming that all of that time was statutorily tolled, Petitioner had 365 days after October 15, 2003, in which to file his federal petition. Petitioner filed his Petition on June 22, 2004, well within that time period.  Therefore, the petition is timely as to a Fourteenth Amendment execution of sentence claim.

3. <u>Claim 2</u>

Claim 2 is that Petitioner's guilty plea was involuntary because it was induced by a plea bargain that was not kept, in violation of the Fourteenth Amendment.  Petitioner argues that the claim did not accrue until Petitioner had served thirty years.  As noted

**MEMORANDUM ORDER - 7**

above, the Court must distinguish between a challenge to Petitioner's conviction or sentence, and a challenge to the execution of Petitioner's sentence.  Claim 2 is presented as a challenge to the conviction, and, therefore, for statute of limitations purposes, it could have accrued in one of two ways.

First, applying § 2244(d)(1)(A), Petitioner's statute of limitations would have accrued on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."   Because Petitioner's conviction and sentence were final prior to the effective date of AEDPA, his claim should have been filed within the one-year grace period, which ended on April 24, 1997. Clearly, by that calculation, Petitioner's federal Petition was untimely.

Or, if the Court uses § 2244(d)(1)(D), Petitioner should have filed his Petition within one year of "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."  In other words, the operative question is when could Petitioner first have discovered that an "indeterminate life" sentence was not going to be interpreted as a "thirty-year sentence"? Petitioner states that he had written an attorney to ask about this question in 1994, "due to a controversy among prisoners concerning the (30) years life sentence."  *State's Exhibit B-1,* at p. 4.  In addition, on August 9, 1994, pursuant to his request, Petitioner received a time computation sheet from the Idaho State Correctional Institution that showed that his sentence was "not to exceed life," and that had no date written in the space marked "full

**MEMORANDUM ORDER - 8**

term expiration date." *State's Exhibit B-1*, at pp. 22-23.  Therefore, at least two different

pieces of evidence alerted Petitioner to the facts supporting his claim in 1994.

The Ninth Circuit has made it clear that § 2244(d)(1)(D) does not require a

petitioner to have understood "the legal significance of those facts," but that the petitioner

must have known simply the facts themselves, at which time "the due diligence (and

hence the limitations) clock starts ticking."  *Hasan v. Galaza*, 254 F.3d 1150, 1154 n.3

(2001) (relying on *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000) (Section 2241(d)(1)

sets forth an objective standard)); *see also Shannon v. Newland*, 410  F.3d 1083, 1088

(9th Cir. 2005) (new case law does not qualify as a "factual predicate" under §

2241(d)(1)).  Under this formulation, Petitioner's statute would have started on AEDPA's

inception date and ended one year later, on April 24, 1997.  Therefore, this claim is time-

barred.

        4.    <u>Claim 3</u>

Claim 3 is that Petitioner's guilty plea was involuntary because trial counsel was

ineffective in advising him that an indeterminate sentence was a maximum of thirty years.

This claim is construed as a challenge to the conviction or sentence.  Applying the most

generous statute of limitations calculation, Petitioner knew of the factual predicate of his

claim in 1994.  Therefore, his statute of limitations expired on April 24, 1997.

        5.    <u>Claim 4</u>

Claim 4 is that the judge intended that Petitioner be released on parole in thirty

years and the Parole Commission's failure to release him is the equivalent of the Parole

**MEMORANDUM ORDER - 9**

Commission changing his sentence to a fixed, rather than an indeterminate, life sentence, an alleged Ex Post Facto Clause, Eighth Amendment, and Fourteenth Amendment violation.

The statute of limitations on a parole claim runs from "the date on which the factual predicate of the . . . claims presented could have been discovered through the exercise of due diligence" under § 2244(d)(1)(D), rather than from "the date on which the judgment became final" under § 2244(d)(1)(A), because an administrative decision is not a judgment. *Redd v. McGrath* 343 F.3d at 1081-82.

Petitioner was denied parole on January 4, 2000.  On February 22, 2000, he received a clarifying letter from the Parole Commission that denial meant he would spend the rest of his life in prison.  There is no indication that Petitioner filed a Self-Initiated Parole Report (SIPR) to administratively appeal his claim.  Therefore, the statute of limitations for any denial of parole claim began to run on January 4, 2000.  His statute ran for 119 days between January 4, 2000, and May 4, 2000, when Petitioner filed his state petition for writ of habeas corpus.  His statute was tolled until October 14, 2003, when the Idaho Supreme Court dismissed his appeal.  His statute began running again and ran for 238 days, until Petitioner filed his federal Habeas Corpus Petition on June 22, 2004, for a total of 357 days, which makes the Petition timely as to this claim, as Respondent concedes.

      6.    <u>Conclusion as to Statute of Limitations Issues</u>

**MEMORANDUM ORDER - 10**

Based on the foregoing, the Court concludes that Claim 1, as an execution of sentence claim, is timely, as is Claim 4, a parole commission claim.  However, Claims 2 and 3 are barred by the statute of limitations.  Petitioner has been provided with an opportunity to show equitable tolling should be applied to toll the time between the date his statute expired and the date he filed his federal Petition, but he has not done so.

The Ninth Circuit has suggested that there may be an actual innocence exception to the one-year statute of limitations.  *See Majoy v. Roe*, 296 F.3d 770 (9th Cir. 2002) (remanding to the district court to determine whether the petitioner had established a claim of actual innocence, and if so, to next decide "what consequence such a finding has with respect to AEDPA's one-year statute of limitations").  *Majoy* indicates that district courts should first consider whether a petitioner is actually innocent before deciding if an actual innocence exception to the statute of limitation exists.  *Id*. at 777-78.  The Court is not clear how actual innocence could be an issue in a case where the defendant challenges his sentence, rather than his conviction.  Nevertheless, Petitioner will be provided with an opportunity to show actual innocence regarding his claim that his sentence was intended to be no longer than thirty years.

**C.     Procedural Default**

Respondent alleges that dismissal of all of Petitioner's claims is warranted because they were not fairly presented to the state court as federal issues, thus resulting in a procedural default bar in this court.  Respondent also alleges that Petitioner's claims are

**MEMORANDUM ORDER - 11**

procedurally defaulted because the Idaho Supreme Court dismissed his claims as a result of Petitioner's failure to file a timely brief.

      1.     <u>Standard of Law</u>

A habeas petitioner must first exhaust his state court remedies as to all of his constitutional claims before presenting them to the federal court. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). To exhaust a habeas claim properly, a habeas petitioner must invoke one complete round of the state's established appellate review process, giving the state courts a full and fair opportunity to correct the alleged constitutional error at each level of appellate review. *Baldwin v. Reese*, 541 U.S. 27 (2004).

For proper exhaustion, each claim must be presented as a *federal* claim to the state courts. The mere similarity between a state law claim and a federal claim does not constitute fair presentation of the federal claim. *See Duncan v. Henry*, 513 U.S. 364, 365-66 (1995). General references in state court to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, are likewise insufficient. *See Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999).

In *Anderson v. Harless*, 459 U.S. 4 (1982), the United States Supreme Court determined that the petitioner had not properly exhausted his due process claim in state court because, although he had presented the *facts* upon which the claim could have been based, he argued only that the facts amounted to "reversible error." The Court held that a citation to a state law case which included citations to the Sixth and Fourteenth

**MEMORANDUM ORDER - 12**

Amendments but which was "predicated solely on state law in which no federal issues were decided" was not enough to constitute a "fair presentation."  459 U.S. at 5.

Likewise, in *Picard v. Connor*, 404 U.S. 270 (1971), the Court determined that the prisoner had not fairly presented a constitutional issue to the state court.  The Court noted that, after having "examined the pretrial, trial, and appellate papers, [we] do not discover any indication of an attack upon the prosecution under the indictment as violative of the Equal Protection Clause of the Fourteenth Amendment," 404 U.S. at 273-74, and that, "[u]ntil he reached this Court, respondent never contended that the method by which he was brought to trial denied him equal protection of the laws."  404 U.S. at 276-77.   The Court went on to explain:

> [W]e do not imply that respondent could have raised the equal protection claim only by citing "book and verse on the federal constitution."  We simply hold that the substance of a federal habeas corpus claim must first be presented to the state courts.  The claim that an indictment is invalid is not the substantial equivalent of a claim that it results in an unconstitutional discrimination.

404 U.S. at 277-78 (citations omitted).  Similarly, a claim that a petitioner's "broad federal due process right" was violated cannot be read to include a "more particular [due process] analysis developed in cases such as *Sandstrom* [*v. Montana*, 442 U.S. 510 (1979)]."  *Anderson v. Harless*, 459 U.S. at 7, cited in *Gray v. Netherland*, 518 U.S. 152, 163 (1996).

In *Duncan v. Henry*, 513 U.S. at 365-66, the Supreme Court left open the question of whether a claim can be properly exhausted when it is unclear from the petition whether

**MEMORANDUM ORDER - 13**

the petitioner is relying on a state or federal standard, and the state and federal standard are not merely similar, but are functionally the same.  In *Sanders v. Ryder*, 342 F.3d 991 (9th Cir. 2003), the Ninth Circuit filled the gap in the law by determining that where the state and federal standards for "ineffective assistance of counsel" were the same, the pro se petitioner had properly exhausted his claims by citing only the words "ineffective assistance of counsel."  *Id*. at 1000-01.  The *Sanders* Court noted that, "for the purposes of exhaustion, pro se petitions are held to a more lenient standard than counseled petitions."  *Id.* at 999.  Importantly, "the complete exhaustion rule is not to trap the unwary pro se prisoner."  *Id*. (citing *Peterson v. Lampert*, 319 F.3d 1153, 1159 (9th Cir. 2003) (en banc) (quoting *Slack v. McDaniel*, 529 U.S. 473, 387 (2000))).

If the state's highest court dismisses a claim on state procedural grounds and does not reach the merits of a federal claim, then the claim is procedurally defaulted, preventing federal habeas corpus review of the claim.  However, a state procedural bar must rest on "adequate and independent" state grounds in order to bar federal review of a claim.  *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

"'In order to constitute adequate and independent grounds sufficient to support a finding of procedural default, a state rule must be clear, consistently applied, and well-established at the time of the petitioner's purported default.'"  *Martinez v. Klauser,* 266 F.3d 1091, 1093-94 (9th Cir. 2001) (quoting *Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir. 1994)).  Particularly, the *Martinez* Court explained that when there is "an absence of prior authority supporting the [state court's] decision" and the decision appears "contrary to

**MEMORANDUM ORDER - 14**

[state] law," such a decision does *not* rest on a "clear, consistently applied, and well-established" state procedural rule, and the procedural default may *not* be applied to bar consideration of the merits of a petitioner's claim in a federal habeas corpus action. *Id. See also Lee v. Kemna*, 534 U.S. 362 (2002) (holding that the Missouri court's enforcement of its rule requiring motions for a continuance to be in writing was not adequate to bar federal review because the petitioner substantially complied with the rule and enforcement of the rule served no real governmental interest); *Lilly v. Gillmore*, 988 F.2d 783, 785 (7th Cir. 1993) (a rule applied "infrequently, unexpectedly, or freakishly may not constitute an independent and adequate state ground").

The Ninth Circuit has recently stated:

> To be firmly established or consistently applied, a rule must be clear and certain. *See Melendez v. Pliler*, 288 F.3d 1120, 1124 (9th Cir.2002) (citing *Morales v. Calderon*, 85 F.3d 1387, 1390-92 (9th Cir.1996)); *see also Wells v. Maass*, 28 F.3d 1005, 1010 (1994) ("a state rule must be clear, consistently applied, and well-established"). Novel procedural rules do not bar federal review because petitioners are not put on sufficient notice that they must comply. *See Ford v. Georgia*, 498 U.S. 411, 423-25, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991); *NAACP v. Alabama*, 357 U.S. 449, 454-458, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). Just so, state procedural rules with overly vague standards do not provide petitioners with sufficient notice of how they may avoid violating the rule. Furthermore, poorly defined procedural rules do not provide courts the guidance required for consistent application.

*King v. Lamarque*, – F.3d –, 2006 WL 2684539, at *2 (9th Cir. 2006).

Determining whether a rule is adequate and independent involves a burden-shifting process. In *King v. Lamarque*, the Ninth Circuit Court explained:

**MEMORANDUM ORDER - 15**

> Once the government has pleaded "the existence of an independent and adequate state procedural ground as an affirmative defense, the burden to place that defense in issue shifts to the petitioner." [*Bennett v. Mueller*, 322 F.3d 573, 586 (9th Cir. 2003)]. The petitioner "may satisfy this burden by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule." *Id*. The burden then shifts back to the government, and it bears "the ultimate burden of proving the adequacy" of the relied-upon ground. *Id*. at 585-86.

*Id*.

A claim that was dismissed in state court prior to being heard on the merits as a result of an adequate and independent state procedural bar will not be heard in federal court unless the petitioner shows either that there was legitimate cause for the default and that prejudice resulted from the default, or, alternatively, that the petitioner is actually innocent and a miscarriage of justice would occur if the federal claim is not heard. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Schlup v. Delo*, 513 U.S. 298, 329 (1995).

### 2.     Proper Presentation of Federal Claims Through State District Court

Petitioner's state petition for writ of habeas corpus, filed May 4, 2000, contains no clear federal claims. *State's Exhibit B-1*, at p. 5. Magistrate Judge David Epis granted summary judgment to the State. Petitioner then appealed to the state district court, including an Ex Post Facto Clause claim and a "liberty interest" claim. Judge Kathryn Sticklen affirmed the magistrate's decision and addressed both of Petitioner's claims, as follows. *State's Exhibit B-1*, at p. 202.

**MEMORANDUM ORDER - 16**

Judge Sticklen rejected Petitioner's argument that continuing to incarcerate him for over 30 years violates the federal Ex Post Facto Clause.  Therefore, this Court concludes that Petitioner's Claim 4, as an Ex Post Facto Clause claim, was fairly presented through the level of the district court.  Petitioner also included this claim in his notice of appeal.  The Court will liberally construe Petitioner's Claim 4 in this action to include the claim that failure of the Parole Commission to release him outright or to parole him at the 30-year mark violates the Ex Post Facto Clause.

Judge Sticklen also addressed Petitioner's "liberty interest" claim.  She stated, "According to Cox, the sentencing judge created a liberty interest when he told Cox that an indeterminate life sentence equals thirty years." *State's Exhibit B-1*, at pp. 186-87.  She denied the claim for lack of evidentiary support.

In Idaho, a "liberty interest" claim can be based upon the Fourteenth Amendment of the United States Constitution or Article 1, § 13 of the Idaho Constitution.  The Idaho Supreme Court has "deem[ed] the differences between the standard applied under Idaho's due process clause and the standard applied under the federal due process clause to be negligible." *Jones v. State Bd. of Medicine*, 555 P.2d 399, 405 (Idaho 1976).  This Court is left to determine whether Petitioner "fairly presented" his "liberty interest" claim, when he did not specify his reliance on either the federal Constitution or the Idaho Constitution.

The Ninth Circuit addressed a similar circumstance in *Sanders v. Ryder*, where the pro se petitioner used only the phrase, "ineffective assistance of counsel," and the court held such a claim to be properly exhausted.  342 F.3d at 1000.  As in *Sanders*, here, the

**MEMORANDUM ORDER - 17**

Court finds nothing in Petitioner's filings to indicate that by using the term of art, "liberty interest," he "meant to allege 'specifically and exclusively' a violation of his state constitutional right."  *Id*.

The term "liberty interest" in the context of this case, is a very specific claim, making it distinguishable from a general constitutional reference such as "due process," which could have a myriad of meanings, as in *Anderson v. Harless*.  Relying on the Ninth Circuit's *Sanders* decision by analogy and based on the particular context of this case, the Court liberally construes Claim 1 as a Fourteenth Amendment Due Process Clause liberty interest claim and concludes that it was fairly presented to the state district court as a federal claim.

Addressing the exhaustion issue as to the remaining constitutional claims in Petitioner's federal Petition, the Court finds no mention of the Eighth Amendment in Petitioner's state habeas corpus petition, notice of appeal to the district court, or in Judge Sticklen's Order.  Therefore, the Eighth Amendment issues included in Claim 1 and Claim 4 are procedurally defaulted.  Similarly, Petitioner did not present in state district court the claim that his guilty plea was involuntary based on the State's breach of the plea agreement.  Judge Sticklen's Order did not address that claim.  Therefore, Claim 2, that his guilty plea was involuntary because the State breached the plea agreement, is procedurally defaulted.  For the same reasons, Claim 3, that his guilty plea was involuntary as a result of ineffective assistance of counsel, is procedurally defaulted for lack of fair presentation.

3.     Exhaustion of Claims through Idaho Supreme Court

**MEMORANDUM ORDER - 18**

Petitioner filed a timely notice of appeal from Judge Sticklen's Order denying Petitioner's state petition for writ of habeas corpus. *See State's Exhibit C-1*. On May 1, 2003, Petitioner filed a "Motion: I.A.R. 29(a); 27(d); and 19, to Clarify the Record." *State's Exhibit C-2*. In it he wrote, "Appellant respectfully submits that neither his appeal brief nor his Amended Notice of Appeal may be completed without having the Clerk's record on appeal perfected." *Id*. at p. 2.

On May 5, 2003, the Idaho Supreme Court issued a notice that stated that "The Clerk's Record/Reporter's Transcript is suspended until further notification from this office. Suspended: for District Court Order Re: Motion to Clarify the Record as Filed in District Court 5-1-03. (Treated as Objection to Record.)." *State's Exhibit C-3*. On May 30, 2004, the Idaho Supreme Court issued a notice that the reporter's transcript was filed on May 28, 2003, and that "the current appellate rules require that the appellant(s) brief be filed in this office by July 2, 2003." *State's Exhibit C-4*.

On June 30, 2003, Petitioner filed a document entitled "Omnibus Motions for Extraordinary Relief." *State's Exhibit C-5*. He again discussed his need for a full transcript. On July 7, 2003, Petitioner filed a "Motion for Preparation of Transcript, " wherein he requested the transcript of the sentencing hearing and all copies of the "judgment of conviction" in the state district court record. *State's Exhibit C-6*.

On September 22, 2003, the Clerk of the Supreme Court issued a notice that the briefing due dates were suspended. *State's Exhibit C-9*. Also on that same date, the

**MEMORANDUM ORDER - 19**

Supreme Court issued an order stating that the briefs were due in fourteen days.  *State's Exhibit C-10.*

On September 30, 2003, Petitioner filed an "Amended Notice of Appeal."  *State's Exhibit C-12*.  On October 8, 2003, Petitioner filed a "Motion to Augment Clerk's Record."  *State's Exhibit C-13.*  In this motion, Petitioner stated that he was confused by the Clerk having sent  "two notices, both dated September 22, 2003 – one seeming to contradict the other."  One, he explained suspended the briefing schedule, and the other stated that a brief was due within 14 days.  *Id*. at p. 4; *see State's Exhibits C-9 and C-10.* On October 8, 2003, the same date Petitioner filed his Motion to Augment, the Clerk sent him a notice stating that his Motion to Augment had been received and that the "due dates are not suspended" and referred Petitioner to I.A.R. 30.  *State's Exhibit C-14.*  Idaho Appellate Rule 30 provides: "The filing of a motion to augment shall not suspend or stay the appellate process or the briefing schedule."  However, by this date, the 14-day briefing period set by the conflicting September 22 order had already expired on October 6.

On October 14, 2003, the Idaho Supreme Court issued an order stating that the Motion to Augment was granted in part and denied in part.  It did not state that the appellate brief was overdue.  *State's Exhibit C-15.*  On October 15, 2003, the Clerk of Court issued a notice stating that the appeal was dismissed because on September 22, 2003, the Clerk had issued an order requiring that the brief be submitted within fourteen (14) days (October 6, 2003). *State's Exhibit C-16.*

**MEMORANDUM ORDER - 20**

On November 4, 2003, Petitioner filed a "Motion for Rehearing," arguing that he believed he was going to be given an opportunity to file a brief after the full record had been filed, and he noted that the instructions that the briefing had been suspended and an order to brief had been issued on September 22, 2003. *State's Exhibit C-17*, at p. 5.

While it appears that the Clerk noted that it had sent out a conflicting notice and order as to whether the briefing schedule was suspended or still in place on September 22, the Clerk sent notice on October 8 that the briefing schedule was *not* suspended; however, by that time, the brief was overdue. Because the Clerk issued conflicting orders, attempted to correct the conflict, but gave Petitioner no time to file a brief upon correcting the conflict, the Court concludes that the procedural bar in this instance is not adequate. It is an instance of a rule applied "infrequently, unexpectedly, or freakishly," as explained in *Lilly v. Gillmore*, 988 F.2d at 785, as well as one that "[did] not provide petitioner[] with sufficient notice of how [he] may avoid violating the rule," as explained in *King v. Lamarque*, 2006 WL 2684539, at *2. The Court rejects Respondent's argument that a pro se petitioner should have been able to detect the difference between a notice and an order, sort out the mess, and determine the correct briefing date for himself.

Respondent further argues that there is not a causal link between the confusing notices the Idaho Supreme Court sent out and Petitioner's failure to file an appellate brief. Respondent cites to Petitioner's briefing in this action, where he indicated that he *never intended* to file a brief until the full record was before the Idaho Supreme Court. *See Petitioner's Response to Respondent's First Motion for Summary Dismissal*, at pp. 6-7

**MEMORANDUM ORDER - 21**

(Docket No. 14).  However, taken in context and considering Petitioner's pro se status, the Court finds that Petitioner's intention to not file a brief arose in part from having received contradictory notices from the Clerk.  *See id.*  Therefore, the Court rejects Respondent's argument.

      4.    <u>Conclusion as to Procedural Default Issues</u>

The Court concludes that Petitioner's Eighth Amendment issues asserted in Claims 1 and 4 are procedurally defaulted for lack of fair presentation to the state courts. Likewise, Claims 2 and 3 are procedurally defaulted for failure to fairly present them to the state courts; in addition, they are barred by the statute of limitations.  Petitioner may proceed on Claim 1 (Fourteenth Amendment Due Process Clause liberty interest issue) and Claim 4 (Ex Post Facto Clause parole or release issue) because the state court procedural bar is not adequate.

The Court will allow additional discovery and briefing on the remaining claims through March 30, 2007.  Petitioner may assert actual innocence to excuse the procedural default of his claims and to hurdle the statute of limitations bar at the same time the merits of the other claims are briefed.[2]  Particularly, the Court is interested in determining whether there is an official record or transcript of the sentencing hearing, or, if not,

---

    [2] In *Dretkey v. Haley*, 541, U.S. 386, 393-94 (2004), the Supreme Court admonished federal district courts to first address alternative grounds for relief before extending the "actual innocence" exception to procedural default of constitutional claim of noncapital sentencing error.

**MEMORANDUM ORDER - 22**

whether the prosecuting attorney, the courtroom clerks, court reporter, law clerks, or any other witnesses have a recollection of the sentencing hearing.

The Court notes that Petitioner failed to present the sentencing hearing transcript as evidence supporting his claims in the state district court prior to its grant of summary judgment in favor of the State.  As a result, the district court did not allow Petitioner to expand the appellate record with the sentencing hearing transcript.  *See State's Exhibit B-1*, at pp. 249-50. Therefore, it is unclear at this point whether Petitioner will be able to introduce the sentencing hearing transcript in this case to support the merits of his claims. *See* 28 U.S.C. § 2254(e)(2).

However, the Court may expand the record under Rule 6 of the Rules Governing § 2254 cases with items not presented to the state court that are relevant to the issues of cause and prejudice and miscarriage of justice.  This Court agrees with those courts that have determined that, when the petitioner is requesting discovery *to prove the merits of a claim*, § 2254(e)(2) applies, but when the petitioner is requesting discovery *to show cause and prejudice or a miscarriage of justice*, such a request likely "does not implicate § 2254(e)(2)" and may "establish[] 'good cause' under Rule 6."  *Charles v. Baldwin*, 1999 WL 375591, at *2 (D.Or. 1999), *aff'd on recons.*, *Charles v. Baldwin*, 1999 WL 694716 (D. Or. 1999), *aff'd on appeal in unpub. op.*, *Charles v. Baldwin*, 2002 WL 31395774 (9th Cir. 2002); *see also Cristin v. Brennan*, 281 F.3d 404, 418-19 (3rd Cir. 2002) (there is "no indicia that Congress intended § 2254(e)(2)'s restrictions on evidentiary hearings to apply, in addition to hearings on the merits, to hearings on excuses to procedural default); *accord*

**MEMORANDUM ORDER - 23**

*Sibley v. Culliver*, 377 F.3d 1196 (11th Cir. 2004); *see generally Griffin v. Johnson*, 350 F.3d 956, 966 (9th Cir. 2003) (acknowledging but declining to address the issue of whether § 2254(e)(2) governs a request for a hearing on actual innocence).

If Petitioner wishes to request an evidentiary hearing, he shall do so no later than April 30, 2007.  At that time, he will have to make a threshold showing that he is entitled to one by motion with supporting exhibits**.**

## II.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Petitioner's Motion for Summary Dismissal (Docket No. 37) is conditionally GRANTED as to the statute of limitations issue on Claims 2 and 3, and the procedural default of the Eighth Amendment issue presented in Claims 1 and 4, and Claims 2 and 3.  It is DENIED as to Claim 1 (Fourteenth Amendment Due Process Clause liberty interest issue) and Claim 4 (Ex Post Facto Clause parole or release issue).

IT IS FURTHER HEREBY ORDERED that discovery may proceed through **March 30, 2007.**  If Petitioner wishes to request an evidentiary hearing, he shall do so no later than **April 30, 2007.**



DATED:  **September 29, 2006**

_____
Honorable B. Lynn Winmill

**MEMORANDUM ORDER - 24**

Chief U. S. District Judge